1  Perry Clark
   Cal. Bar No. 197101
2  Law Offices of Perry R. Clark
   825 San Antonio Road, Suite 201
3  Palo Alto, CA  94303
   Tel.: (650) 248-5817
4  perry@perryclarklaw.com

5  *Counsel for Defendant Derek R. Parsons*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10                   **SACRAMENTO DIVISION**

11

12 COMPOSITE RESOURCES, INC.,            Case No. 2:21-cv-02352-KJM-DMC

13                        Plaintiff,     **OPPOSITION TO MOTION ALTER OR
                                         AMEND THE JUDGMENT**
14        v.

15 DEREK R. PARSONS,                     DATE:  December 9, 2022
                                         TIME:   10:00 a.m.
16                        Defendant.     CTRM: 3, 15th Floor

17

18

19

20

21

22

23

24

25

26

27

28

Opp. Mtn. Alter or Amend Judgment

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD.....................................................................................................2

III. ARGUMENT ................................................................................................................3

A. The Court's Order Is Not "Manifestly Unjust"..........................................3

B. There Was No "Clear Error"........................................................................6

1. *Res Judicata* Was Properly Decided on a Motion to Dismiss...........................7

a. The Court Correctly Found Privity for *Res Judicata* Purposes ..............9

b. Plaintiff Composite Admits It Could Have Sued in Nevada ...............10

2. There Is No Applicable "Temporal Exception" ...............................................11

C. There Are No "Equitable Considerations" That Warrant Reconsideration ...........13

IV. CONCLUSION............................................................................................................15

1

<u>TABLE OF AUTHORITIES</u>

2

***Cases***

3

*Birdsell v. Shaliol*, 112 U.S. 485, 488-89 (1884) .......................................................................... 13

4

*Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010) ............................................................ 12

5

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 872 (Fed. Cir. 2006) ........................................ 14

6

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) ............... 3

7

*In re Mwangi*, 764 F.3d 1168, 1173 (9th Cir. 2014) ....................................................................... 4

8

*Jeffries v. Wood*, 114 F.3d 1484, 1492 (9th Cir. 1997) ................................................................... 2

9

*Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) ............................................................... 6

10

*Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ............................................ 2

11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) 2

12

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 620 (Fed. Cir. 1995) .................... 15

13

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 989 (Fed. Cir. 2005) .................................... 5

14

*Nystrom v. Trex Co.*, 580 F.3d 1281, 1285-86 (Fed. Cir. 2009) .................................................... 12

15

*Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995) .............................. 7

16

*Shockley v. Arcan*, 248 F.3d 1349, 1364 (Fed. Cir. 2001) ............................................................ 14

17

*Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) .......................................................... 1

18

*Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981) .............. 4

19

*United States v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2016) ................................................... 2

20

*Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) ............................................... 2

21

***Rules***

22

Fed. R. Civ. P. 15(a)(2) ..................................................................................................................... 7

23

Fed. R. Civ. P. 59(e) .......................................................................................................................... 3

24

25

26

27

28

1

## I.   INTRODUCTION

2      This case does not present a close question on the issue of *res judicata.*  As the Court

3 stated in its order, "under federal law, claim preclusion bars 'lawsuits on any claims that were

4 raised or could have been raised in a prior action.'"  Doc. 26 at 4:21-22, *citing Stewart v. U.S.*

5 *Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).  Here, Plaintiff Composite's counsel repeatedly

6 admitted that Defendant Parsons "could have been joined as a co-defendant in the underlying

7 Nevada case."  Doc. 32 at 16:19-20 ("Tr."; attached as Ex. A, for convenience), 19:1-4 ("We had

8 the ability to sue him [Defendant Parsons]"), 12:1-3 ("Composite Resources chose in the original

9 Nevada case not to sue individual Derek Parsons at the time"), 12:12-14 ("we could have sued

10 Mr. Parsons as a co-defendant in the underlying Nevada case").

11      Despite these admissions of its counsel, Plaintiff Composite now accuses this Court of

12 committing "clear error" and "manifest injustice" in dismissing its case as *res judicata.*  But most

13 of Plaintiff Composite's arguments have already been properly rejected by this Court in a

14 detailed and well-reasoned opinion.

15      Plaintiff Composite's primary new argument is one that the Court addressed *sua sponte*,

16 namely, that it was permissible for Defendant Parsons to raise the *res judicata* defense in a

17 motion to dismiss.  Doc. 23 at 3, n. 1.  Plaintiff Composite now claims that "there is an issue of

18 fact" concerning the "privity" element of *res judicata* that would make a motion to dismiss

19 improper.  Doc. 27:21-22.  But Plaintiff Composite does not dispute the Court's finding that "the

20 allegations of Composite's complaint conclusively demonstrate privity between Parsons and

21 Recon for claim preclusion purposes."  Doc. 23 at 6:12-17.  Plaintiff Composite instead makes

22 arguments about "collateral estoppel" which, even if accurate, would not undermine the Court's

23 finding that the allegations of Plaintiff Composite's own complaint establish privity.

24      Motions like Plaintiff Composite's under Fed. R. Civ. P. 59(e) are rarely granted, and

25 such relief is not proper here.  Plaintiff Composite does not allege that the Court overlooked any

26 facts or arguments.  Nor does it contend that the Court applied the incorrect law.  Instead,

27 Plaintiff Composite simply disagrees with the outcome.  And, as such, Plaintiff Composite's

28 motion should be denied.

## II.      LEGAL STANDARD

By moving under Fed. R. Civ. P. 59(e) to alter or amend the judgment, Plaintiff Composite is seeking extraordinary relief.  "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).  The Ninth Circuit also allows the amendment or alteration of a judgment where the court "made an initial decision that was manifestly unjust." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).

Here, Plaintiff Composite purports to rely on the "clear error" and "manifest injustice" grounds in seeking reconsideration.  "A finding of fact is clearly erroneous only where it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. *United States v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2016) (clear error review is deferential, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."*)*.  A clear error of law "involves an 'unreasonable application' of clearly established federal law [that creates] a 'firm conviction' that one answer, the one rejected by the court, was correct and the other, the application of the federal law that the court adopted, was erroneous." *Tuan Van Tran v. Lindsey*, 212 F.3d 1143, 1153-1154 (9th Cir. 2000).

As for "manifest injustice," "the existence of exceptional circumstances is required before finding a manifest injustice." *Jeffries v. Wood*, 114 F.3d 1484, 1492 (9th Cir. 1997).  "At a minimum, the challenged decision should involve a significant inequity or the extinguishment of a right before being characterized as manifestly unjust. *Id*. (*en banc* holding that there was no "manifest injustice" because no "rights had been extinguished" and that "retrial and resentencing are available options on remand.").

### III.   ARGUMENT

Plaintiff Composite's attempt to comply with L.R. 230(j) ("Applications for Reconsideration") highlights the repetitiveness of the arguments in its motion.  Under that local rule, Plaintiff Composite was required to explain "why the facts or circumstances [supporting reconsideration] were not shown at the time of the prior motion."  L.R. 230(j)(4).  Rather than provide any explanation, Plaintiff Composite simply admits that the "applicable law and argument were provided at the time of the prior motion."  Doc. 27 at 3:12-13.  Plaintiff Composite thus admits that its motion simply repeats the same "law and argument" the Court correctly rejected in its original order.  And for any purportedly "new" arguments, Plaintiff Composite fails to explain they were not raised previously.

### A.   The Court's Order Is Not "Manifestly Unjust"

The core of Plaintiff Composite's accusation that the Court committed "manifest injustice" appears to be its dissatisfaction with the resolution of the Nevada Case.  Specifically, Plaintiff Composite argues that it was "unable to seek damages in the Nevada action after Recon Medical filed for bankruptcy and invoked the formal statutory barriers that arise under the bankruptcy code."  Doc. 273:8-10.  But there is no "manifest injustice" in the routine operation of federal judicial doctrines, including the bankruptcy statutes.  *Jeffries*, 114 F.3d 1484, 1492 (9th Cir. 1997) (no "manifest injustice" where movant "failed to establish that adherence to law of the case would result in a situation meeting this standard.").

Although Plaintiff Composite has failed—despite repeated opportunities—to identify any particular bankruptcy statute that is causing the alleged "manifest injustice," presumably it is referring to the automatic stay provisions of 15 U.S.C. 362(a)(1) ("Section 362(a)(1)").  But "manifest injustice" does not result from the alleged "formal statutory barriers" that arise under Section 362(a)(1).  To the contrary, Section 362(a)(1) was passed by Congress in 1978 to do exactly what happened in the Nevada Case—it "operates as a stay, applicable to all entities, of the . . . continuation . . . of a judicial . . . proceeding against the debtor."  *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) ("When a debtor files a bankruptcy petition, an automatic stay immediately arises."); *In re Mwangi*, 764 F.3d 1168, 1173

1    (9th Cir. 2014) ("The automatic stay is designed to effect an immediate freeze of the status quo

2    by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora

3    against the debtor or affecting the property of the estate.").

4              Here, Plaintiff Composite does not allege that Recon improperly filed for bankruptcy or

5    that the automatic stay provisions of Section 362(a)(1) were improperly administered by the

6    Nevada Court or the bankruptcy court.  Instead, Plaintiff Composite simply expresses its

7    dissatisfaction with the results of the Nevada Case.  Plaintiff Composite makes several

8    overheated—but unsupported—complaints about the Nevada Case and the bankruptcy case, such

9    as that "unscrupulous actors" "loot[ed] the corporate entity as trial approache[d]" and "enjoy[ed]

10   the ill-gotten fruits of patent infringement."  Doc. 27 at 12:10-17.  But even if these allegations

11   had the evidentiary support required under Fed. R. Civ. P. 11—which they do not—they should

12   have been made in the Nevada Case or the bankruptcy case, not in an entirely new proceeding in

13   any entirely different court.  And, in any event, mere dissatisfaction by a litigant does not

14   establish that a court committed "manifest injustice."  *Jasmin v. Santa Monica Police Dep't*, 828

15   Fed. Appx. 347, 350 (9th Cir. 2020, non-precedential) (upholding denial of Rule 59(e) motion

16   where "although [the movant] makes claims of a manifest injustice, her claims simply express

17   her dissatisfaction with the district court's decision.") *citing Twentieth Century-Fox Film Corp.*

18   *v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981) (recognizing that a litigant's dissatisfaction

19   with a judgment is "not sufficient to establish the 'extraordinary circumstances' necessary to

20   permit the litigant relief from the judgment under Rule 60(b)(6)").

21             Even assuming, however, that the automatic stay provision of the bankruptcy statute

22   created "formal statutory barriers" with respect to Recon Medical, Plaintiff Composite has still

23   failed to show how that provision created "formal statutory barriers" as to Defendant Parsons.

24   Indeed, as the Court pointed out, "even if Recon's bankruptcy filing barred Composite from

25   recovering damages from Recon in the Nevada litigation, it did not create a formal barrier to its

26   recovering damages from Parsons."  Doc. 26 at 9:27-10:1.  Rather than provide any explanation,

27   Plaintiff Composite argues that it "*could have alleged if allowed leave to amend*" facts that

28   would establish a "formal barrier" as to Defendant Parsons.  Doc. 27 at 7:14-16 (emphasis

original).  But it is hard to imagine what sort of facts Plaintiff Composite would allege—indeed, if the automatic stay that arose from Recon's bankruptcy applied to Defendant Parsons, then this case against Defendant Parsons would be stayed as well.  And regardless, even if Plaintiff Composite had any facts, it is too late.  "A party that fails to introduce facts . . . cannot introduce them later in a motion to amend by claiming that they constitute 'newly discovered evidence' unless they were previously unavailable." *Zimmerman*, 255 F.3d at 740 *citing Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) ("The district court did not abuse its discretion in denying GenCorp's motion on the basis of newly discovered evidence.")

Rather than identifying a "formal barrier" to proceeding against Defendant Parsons in the Nevada Case, Plaintiff Composite argues that "when the bankruptcy's formal barriers arose, it was too late to amend the complaint or to add new parties to the case." Doc. 27 at 6:15-16.  But Plaintiff Composite never explains why it was it was "too late" or why it could not have amended its complaint under Fed. R. Civ. P. 15(a)(2) ("a party may amend its pleading only with . . . court's leave.  The court should freely give leave when justice so requires.").  And, even if it had been denied leave to amend due to its delay in seeking leave, "denial of leave to amend in a prior action based on dilatoriness does not prevent application of *res judicata* in a subsequent action." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 989 (Fed. Cir. 2005) ("Permitting these later-filed claims to proceed would create incentive for plaintiffs to hold back claims and have a second adjudication.").[1]

In sum, Plaintiff Composite's "manifest injustice" argument fails because it relies on nothing more than the standard operation of the bankruptcy statute and the federal rules.  And as such, Plaintiff Composite has failed to show that the statute or the rule "extinguished a right" or created "exceptional circumstances required before finding a manifest injustice." *Jeffries v. Wood*, 114 F.3d 1484, 1492 (9th 1997).

[1] Plaintiff Composite's "too late to amend" argument also defies common sense.  If a party could point to the expiration of the deadline to amend a complaint as an exception to *res judicata*, it is hard to imagine any situation where *res judicata* would apply.  Indeed, one of the three elements needed to establish *res judicata* is a final judgment. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).  Given that *res judicata* requires a final judgment, it is virtually impossible to envision a scenario where the deadline to add parties to the earlier proceeding has not expired.  Thus, an exception to *res judicata* that allows a second lawsuit so long as the time to amend expired in the first lawsuit would render *res judicata* virtually meaningless.

1

**B.      There Was No "Clear Error"**

2        Plaintiff Composite devotes the bulk of its brief to arguments it makes under the heading

3   "Clear Error."  Doc. 27 at 4:5-9:28.  In Defendant Parsons' view, Plaintiff Composite is making

4   two arguments: (1) that the Court erred in considering *res judicata* on a motion to dismiss (Doc.

5   27 at 4:6-9:5) and (2) that the Court improperly rejected Plaintiff Composite's "temporal

6   exception" arguments (Doc. 27 at 9:6-28).  Defendant Parsons will address each in separate

7   sections below.

8        But overall, for both arguments, Plaintiff Composite fails to show that—even if there was

9   "error"—the alleged error rises to the level of "clear error."  *Christensen*, *above,* 828 F.3d at 779

10  ("A finding of fact is clearly erroneous only where it is (1) illogical, (2) implausible, or (3)

11  without support in inferences that may be drawn from the facts in the record.").

12       The lack of clear error in this case is highlighted by its contrast with a recent Ninth

13  Circuit case.  In *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022), the Ninth Circuit

14  agreed that the district court had committed "clear error" when it overlooked evidence submitted

15  with the original motion:

16          In describing the ALJ's explanation, the district court's initial ruling cited only a
            single page of the ALJ's decision.  The Commissioner timely filed a Rule 59(e)
17          motion, asserting that the court had clearly erred.  Commendably, the district
            court candidly confessed clear error and granted the Commissioner's Rule 59(e)
18          motion.  Looking to *all* the pages of the ALJ's decision, the court held that,
            contrary to its original ruling, the ALJ had, in fact, explained which daily
19          activities conflicted with which parts of Claimant's testimony.

20  *Id*. (emphasis original).

21       Here, there is no such error alleged and this Court did not overlook anything.  Indeed, as

22  for the issue of whether Defendant Parsons' *res judicata* defense was properly asserted in a

23  motion to dismiss, Plaintiff Composite did not even address that issue in its original brief.

24  Indeed, there was nothing to overlook because the Court itself raised and resolved the issue *sua*

25  *sponte*.  (Doc. 26 at n. 2).  And as for the "temporal exception," Plaintiff Composite expressly

26  admits that "the Court decided that the temporal exception did not apply."  (Doc. 27 at 9:6-7).

27  As such, the situation in this case is significantly distinct from the "clear error" in *Kaufmann*

28  because Plaintiff Composite does not point to anything that the Court allegedly overlooked or

failed to consider.  And because Plaintiff Composite also fails to show that any alleged error by the Court is illogical, implausible, or without support, it fails to show that there was "clear error."

### 1.    *Res Judicata* **Was Properly Decided on a Motion to Dismiss.**

It was proper for the Court to decide the issue of *res judicata* on Defendant Parsons' motion to dismiss for the reasons set forth in the Court's order.  (Doc. 26 at n. 2) ("The court will nevertheless rule on Parsons' motion to dismiss.  The court has the facts necessary to rule on the motion, and there appears to be no other reason why an answer would be useful.").  Plaintiff Composite makes two arguments against the Court's reasoning.  First, Plaintiff Composite argues that there was no privity and thus no *res judicata*.  Doc. 27 at 4:16-6:4.  Second, Plaintiff Composite argues that there was no proof that the Nevada court had jurisdiction over Defendant Parsons' at the time of Recon's bankruptcy.  Doc. 27 at 6:26-7:5.  Both arguments fail as discussed in the sections that follow.

But as an initial matter, Plaintiff Composite's arguments should be rejected because they are new arguments that it is raising for the first time in this motion to alter or amend the judgement.  "A district court does not abuse its discretion when it disregards legal arguments made for the first time on a motion to alter or amend a judgment." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) *citing Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995) ("The district court did not abuse its discretion in declining to consider an argument raised for the first time on reconsideration without a good excuse.").  Here, Plaintiff Composite did not mention any issues with Defendant Parsons raising *res judicata* in a motion to dismiss or with jurisdiction over Defendant Parsons in Nevada.  And because Plaintiff Composite offers no excuse for this failure, these arguments it is raising now for the first time in its current motion should be rejected.

### a.    **The Court Correctly Found Privity for** *Res Judicata* **Purposes**

In any event, Plaintiff Composite's arguments about *res judicata* and the motion to dismiss should be rejected as a substantive matter.  According to Plaintiff Composite, "there is an issue of fact concerning privity."  Doc. 27 at 4:21-22.  But that is not true: the Court's finding regarding privity was based on the facts alleged in Plaintiff Composite's own complaint.  As the

Court specifically found: "the allegations of Composite's complaint conclusively demonstrate privity between Parsons and Recon for claim preclusion purposes." Doc. 26 at 6:12-16. ("Composite repeatedly alleges that Parsons 'controls Recon' and has 'ultimate authority' over all of Recon's business activities; it describes Parsons as the 'moving force' and the person 'responsible for all of [Recon's] relevant decisions' that led to its 'tortious acts of patent infringement.' See, e.g., Compl. ¶ 2."). And as Plaintiff Composite acknowledges in its brief, these allegations must be "taken as true" in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Doc. 27 at 7:9-12, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Rather than point to any facts that would show a lack of privity, Plaintiff Composite raises two red herrings. The first is its argument that "the mere assertion of the legal conclusion of collateral estoppel does not necessarily include an admission of privity for purposes of claim preclusion." Doc. 27 at 4:28-5:2. This is irrelevant, however, because the Court's order found "privity" based on the allegations of the complaint "even absent th[e] concession" by Plaintiff Composite that there was privity for purposes of collateral estoppel. Doc. 26 at 6:9.

The second red herring is Plaintiff Composite's argument that "the Federal Circuit has held that 'control of a party to the litigation through stock ownership or corporate officership is not enough to create privity, absent a showing that the corporate form has been ignored.'" Doc. 27 at 5:12-14. But Plaintiff Composite fails to dispute that the allegations of its complaint— which were cited in detail in Defendant Parsons' motion to dismiss—allege far more than mere "stock ownership or corporate officership":

- "Plaintiff Composite Resources, Inc. ('Composite' or 'Plaintiff') brings this action seeking relief against Defendant Derek R. Parsons ('Defendant'), an officer of the corporation Recon Medical, LLC, who personally took part in acts of patent infringement by the corporation and/or who specifically directed other officers, agents, and employees of the corporation to commit the acts of patent infringement." (Compl. at 1).

- "Defendant is the chief executive officer ('CEO') of Recon Medical, LLC (hereinafter 'RECON'), and an employee of RECON. Defendant controls RECON. Defendant has personally directed and participated in tortious acts of patent infringement committed by

RECON, and Defendant has been the moving force behind those tortious acts of patent infringement.  Defendant is, and has been, responsible for all of the relevant decisions by RECON that led to the tortious acts of patent infringement committed by RECON.  Defendant has ultimate authority and control over all of RECON's business activities." (Compl. ¶ 2).

• "In short, Defendant has been personally responsible for the tortious conduct alleged herein that led to RECON's liability for patent infringement." (Compl. ¶ 14).

• "Defendant attended the entire trial as RECON's representative.  Defendant testified on behalf of RECON at the trial.  Defendant directed the trial and controlled the defense offered at trial on behalf of RECON." (Compl. ¶ 33).

• "Defendant has actively induced RECON to commit acts of infringement of the '067 Patent, the '253 Patent, and the '807 Patent, and is currently inducing RECON to infringe, either directly or indirectly, by, inter alia, using, offering for sale, selling, and importing infringing tourniquets and other products, and otherwise engaging in business activities in this State and District.  Additionally, Defendant has actively induced RECON to place infringing tourniquets and other products into the stream of commerce using the website at www.reconmedical.com, using Amazon.com, and by other means, with knowledge, or reasonable foreseeability, that a termination point of the stream is this State and District.  Further, Defendant has actively induced RECON to knowingly send infringing products to purchasers in this State and District, and continues to do so." (Compl. ¶ 40).

• "Defendant personally took part in those infringing acts by RECON and/or specifically directed other officers, agents, and employees of RECON to commit those infringing acts." (Compl. ¶ 47).

• "At all relevant times, Defendant directed and controlled the defense offered on behalf of RECON in Civil Action No. 2:17-cv-01755-MMD-VCF in the United States District Court for the District of Nevada.  Defendant attended the entire trial as RECON's representative.  Defendant testified on behalf of RECON at the trial.  Defendant acted as the Chief Executive Officer of RECON, was the responsible person for RECON, and made all relevant decisions on behalf of RECON." (Compl. ¶ 49).

- "Defendant is bound by the outcome of Civil Action No. 2:17-cv-01755-MMD-VCF in the United States District Court for the District of Nevada, and is collaterally estopped from challenging the ownership, validity, or infringement of Plaintiff's '067 Patent."  (Compl. ¶ 50).

- "Defendant is bound by the outcome of Civil Action No. 2:17-cv-01755-MMD-VCF in the United States District Court for the District of Nevada, and is collaterally estopped from challenging the ownership, validity, or infringement of Plaintiff's '253 Patent."  (Compl. ¶ 62).

- "Defendant is bound by the outcome of Civil Action No. 2:17-cv-01755-MMD-VCF in the United States District Court for the District of Nevada, and is collaterally estopped from challenging the ownership, validity, or infringement of Plaintiff's '807 Patent."  (Compl. ¶ 74).

In light of the facts pled in Plaintiff Composite's complaint, there is no basis for its allegation that the Court committed clear error in finding privity.

### b. Plaintiff Composite Admits It Could Have Sued in Nevada

Plaintiff Composite devotes seven lines in its brief to the argument that *res judicata* should not apply because there is a "question" as to whether the Nevada court had jurisdiction over Defendant Parsons when Recon filed for bankruptcy.  Doc. 27 at 6:26-to 7:4 ("Defendant Parsons has not alleged or offered proof that the Nevada court had jurisdiction over him in 2021.").  According to Plaintiff Composite, "the relevant question . . . is whether Parsons could have been added and damages recovered from him at the point in time when Recon filed for bankruptcy on the ever of trial, *i.e.*, on September 3, 2021." *Id*.

The problem with this argument, however, is that while Plaintiff Composite repeatedly admits it could have sued initially in Nevada, it fails explain how its ability to sue Defendant Parsons somehow evaporated as the Nevada Case progressed.  Indeed, there can be no real dispute that Plaintiff Composite's counsel admitted that Plaintiff Composite could have sued Defendant Parsons in the Nevada Case:

- "We had the ability to sue him [Defendant Parsons], and this would have been at the commencement of that case when we filed the complaint, and we could have added Mr. Parsons individually at that time, but we were not obliged to do so."  Tr. 19:1-4.

- "I think at bottom the point is Composite Resources chose in the original Nevada case not to sue individual Derek Parsons at the time, and there is nothing that states that Composite Resources was obligated to sue Mr. Parsons in the same case at the same time."  Tr. 12:1-3.

- "Mr. Parsons, while he could have been joined as a co-defendant in the underlying Nevada case, was not."  Tr. 16:19-20.

- "So just because we could have sued Mr. Parsons as a co-defendant in the underlying Nevada case doesn't mean we were obligated to."  Tr. 12:12-14.

If Plaintiff Composite's counsel is taken at their word, Plaintiff Composite alleges that there was no jurisdictional barrier to suing Defendant Parsons when the Nevada Case began. And without any explanation as to how a jurisdictional barrier to suit against Defendant Parsons could have subsequently arisen during the course of the Nevada Case, Plaintiff Composite's arguments about jurisdiction should be rejected.

### 2.     There Is No Applicable "Temporal Exception."

As the Court may recall, Plaintiff Composite argued in its brief opposing the motion to dismiss that it was entitled to a "temporal exception" to *res judicata*.  Doc. 16 at 6-7.  In particular, Plaintiff Composite argued that Defendant Parsons committed "significant acts of patent infringement during the pendency of the Nevada Case" and "after the trial of the Nevada case."  *Id*. at 7:4-5 and 9-11.  The Court correctly rejected this argument because, as the order said, "Composite does not point to any 'new rights' that stem from Parsons' directing Recon to sell the exact same products that infringe the exact same patents at issue in its Nevada lawsuit."  Doc. 26 at 7:12-13.

The Court's holding is well-grounded Federal Circuit precedent.  "For claim preclusion in a patent case, an accused infringer must show that the accused product or process in the second suit is 'essentially the same' as the accused product or process in the first suit."  *Nystrom*

*v. Trex Co.*, 580 F.3d 1281, 1285-86 (Fed. Cir. 2009) ("If, therefore, the accused device of the second suit remains unchanged with respect to the corresponding claim limitations at issue in the first suit, then Nystrom [the patent plaintiff] has no remaining avenue to pursue his claims now. In essence, Nystrom would be attempting to prove infringement of the same claim limitations as to the same features of the accused devices.  As such, this case presents the exact situation that *res judicata* seeks to prevent.  *Res judicata* thus bars this second attempt to adjudicate the same issues.").

Here, there is no dispute that the accused products and asserted patents are the same.  As the Court found without any objection by Plaintiff Composite:

> It is undisputed that the same patents at issue in the Nevada lawsuit—'067, '253 and '807—are at issue here.  *See, e.g.*, Compl. ¶ 37 (alleging Parsons is responsible for Recon's continuing infringement of Composite's '067, '253 and '807 patents).  It also is undisputed that the same tourniquets at issue in the Nevada lawsuit—Recon's Gen 1, Gen 2, Gen 3 and Gen 4 tourniquets—are at issue here.  *Compare, e.g., id.* ¶¶ 22–25 (alleging Recon's Gen 1–4 tourniquets infringe Composite's patents), *with, e.g.*, Perm. Inj. Order at 3 ("The jury found that Recon's Gen 1, Gen 2, Gen 3, and Gen 4 tourniquets infringe [Composite's] asserted patents.").

Doc. 26 at 5:7-14.  Thus, under Federal Circuit precedent, Plaintiff Composite's claims in this case are barred by *res judicata* because they are based on the same infringement claims as in the Nevada Case.

Plaintiff Composite attempts to resurrect its "temporal exception" argument by citing to *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010).  But as the Court pointed out in its order, *Gillig* is factually distinct from this case.  Doc. 26 at 7:3-18.  The issue in *Gillig* was inventorship, and more specifically whether the plaintiff could claim inventorship rights to certain patents based on two different assignment agreements (one from 2000 and one from 2005).  *Id*.  The Federal Circuit held that *res judicata* barred re-litigation of the 2000 assignment agreement because that agreement was entered into before the first case and was actually litigated in that case.  *Id*.  But the Federal Circuit held that *res judicata* did not bar a subsequent suit on the 2005 assignment agreement because events related to that agreement happened after the first lawsuit.  *Id*.  ("To the extent that Triple Tee is asserting an inventorship correction claim based on a purported 2000 assignment, that claim is, of course, barred, since the district court

1    already found that there was no assignment of rights in 2000.  However, to the extent that Triple

2    Tee is asserting an inventorship correction claim based on a later 2005 assignment, there is no

3    bar.  The first lawsuit did not address Triple Tee's claims based on the 2005 assignment. . . .

4    Because any claim by Triple Tee based on a 2005 assignment did not accrue until after Triple

5    Tee I was filed and was not decided in that first action, the doctrine of *res judicata* does not

6    apply.").

7            The facts of *Gillig* are distinguishable because, in this case, there no equivalent to the

8    2005 assignment agreement.  There was no "GEN 5" product that was launched by Recon that

9    was different from GENS 1, 2, 3, and 4 at issue in the Nevada Case.  There were no new patents

10   or patent claims that are at issue in this case that were not at issue in the Nevada Case.  Instead,

11   as Plaintiff Composite appears to concede, the nucleus of facts in this case—the accused

12   products and asserted patents—are the same in this case as in the Nevada Case.   And as a result,

13   under a straightforward application of *res judicata*, this case was properly dismissed.

14           **C.      There Are No "Equitable Considerations" That Warrant Reconsideration**

15           Plaintiff Composite's final arguments regarding "Equitable Considerations" are easily

16   dispatched because they rely on cases that the Federal Circuit has expressly held do not apply to

17   situations involving *res judicata*.

18           The gist of Plaintiff Composite's argument is that it was not necessary to join Defendant

19   Parsons to the Nevada Case because, as joint-tortfeasors, Plaintiff Composite has causes of

20   action for infringement against both Defendant Parsons and Recon. Doc. 27 at 10:3-17.  For this

21   proposition, Plaintiff Composite relies on a series of cases beginning with *Birdsell v. Shaliol*, 112

22   U.S. 485, 488-89 (1884).  In *Birdsell*, the Supreme Court held that "by our law, judgment against

23   one joint trespasser, without full satisfaction, is no bar to a suit against another for the same

24   trespass."  *Id*. at 49.  The Federal Circuit, following *Birdsell*, has held that "in patent

25   infringement cases each joint-tortfeasor is liable for the full amount of damages up to a full

26   single recovery, and that there may be as many causes of action as there are joint-tortfeasors."

27   *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 872 (Fed. Cir. 2006).  The Federal Circuit has

28

1   also held that "entry of judgment against one infringer does not automatically release other

2   related infringers." *Shockley v. Arcan*, 248 F.3d 1349, 1364 (Fed. Cir. 2001) (*citing Birdsell*).

3        But the Federal Circuit has expressly rejected the application of the *Birdsell* line of cases

4   to the normal application of *res judicata*. In *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d

5   1298, 1304 (Fed. Cir. 2007), the Federal Circuit recognized that *Birdsell* and its progeny

6   established that the doctrine of "full compensation"—which arises when a judgment is not fully

7   paid or satisfied—applies to patent cases. *Id.* ("In light of *Birdsell* and its progeny, Transclean

8   contends it is free to sue users of the T-Tech machine because it has not collected on the

9   judgment against Bridgewood."). The Federal Circuit, however, specifically rejected the notion

10  that the doctrine of full compensation in *Birdswell* somehow trumps *res judicata*. *Id.* ("Despite

11  Transclean's protestations to the contrary, *Birdsell* and the other cases relied on by Transclean

12  involve only the doctrine of full compensation. *See Glenayre*, 443 F.3d at 862-64; 7 Donald S.

13  Chisum, CHISUM ON PATENTS § 20.03[7][b][iii] (2002). They do not address the added question

14  of when and how claim preclusion may arise in such second suits.").

15       The situation in *Transclean* is similar to this case. There, the plaintiff, Transclean, had

16  sued Bridgeport, the maker of the "T-Tech machine," in a previous patent case and obtained a

17  judgment against Bridgeport. *Transclean*, 474 F.3d at 1301. Transclean alleged that it had not

18  recovered on the judgment. *Id.* Transclean then filed a second suit against customers of

19  Bridgeport that used the T-Tech machine, relying on the *Birdsell* line of cases to argue that it

20  could sue the customers as joint tortfeasors. *Id.* The district court dismissed Transclean's case

21  as barred, holding that "under the doctrine of claim preclusion, the judgment against Bridgewood

22  bars Transclean from bringing a separate infringement action against Bridgewood's

23  customers."). *Id.*

24       The Federal Circuit upheld the district court's finding that *res judicata* barred

25  Transclean's claims. *Transclean*, 474 F.3d at 1304 ("As the trial court correctly noted, the issue

26  in this case is not whether Transclean may sue both the manufacturer and users of the T-Tech

27  machine. The issue is whether, having failed to bring infringement claims against the users in

28  the first litigation, Transclean should be barred under the doctrine of claim preclusion from

bringing those claims in a second suit.").   As the Federal Circuit pointed out, "a plaintiff who chooses to bring two separate actions against two tortfeasors who are jointly responsible for the same injury runs the risk that the court will find the parties sufficiently related that the second action is barred by claim preclusion." *Id. citing Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 620 (Fed. Cir. 1995).

Here, the same reasoning applies.  Assuming for the sake of argument that Plaintiff Composite had causes of action against both Defendant Parsons and Recon, that fact alone would not preclude a finding of *res judicata*.  And because the facts alleged in Plaintiff Composite's complaint establish all of the elements *res judicata*, this case against Defendant Parsons is barred.

## IV.   CONCLUSION

Plaintiff Composite's motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) should be denied in its entirety.  Plaintiff Composite has failed to show that this Court's thorough and legally sound order constitutes "clear error" or "manifest injustice."  And Plaintiff Composite has failed—in both its original opposition and in the current motion—to point to any facts that would warrant leave to amend.

Dated:  November 9, 2022                    Respectfully submitted,

*Counsel for Defendant, Derek R. Parsons*

/s/ *Perry Clark*
Perry Clark
Cal. Bar No. 197101
Law Offices of Perry R. Clark
825 San Antonio Road, Suite 201
Palo Alto, CA  94303
Tel.: (650) 248-5817
perry@perryclarklaw.com